IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

.

**HEATHER J. JACOBSON**,

No. 6:15-cv-00252-CL

Plaintiff,

**OPINION   AND   ORDER**

v.

**COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION**,

Defendant.

_____

MARK D. CLARKE, Magistrate Judge.

Plaintiff Heather J. Jacobson ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). This

court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision

is supported by substantial evidence, that decision is affirmed and this matter is dismissed.

Page 1 - OPINION AND ORDER

## BACKGROUND

Plaintiff was born on May 12, 1983, and was 25 years old when she filed her application. Tr. 28. She has a high school education, and has worked as a resident assistant in a nursing home, cashier and pump attendant at a gas station, and telemarketer. Tr. 233.

Plaintiff protectively filed an application for disability benefits on January 30, 2009, alleging disability due to "heart and mental health problems, hepatitis C." Tr. 244. The Commissioner denied her application initially and upon reconsideration. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on June 23, 2011. Tr. 37-70. On July 26, 2011, the ALJ found Plaintiff not disabled. Tr. 96-112. The Appeals Council granted Plaintiff's request for review, and remanded this matter for a new hearing . Tr. 114-16. A second hearing was held before an ALJ on July 9, 2013. Tr. 71-93. On August 7, 2013, the ALJ found Plaintiff not disabled. Tr. 14-36. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision Tr. 1-4. Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920(SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(I). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
    expected to result in death, an impairment is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
    or must be expected to last for a continuous period of at least 12 months.
    20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
    impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
    416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
    proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis proceeds beyond step three. At that
    point, the ALJ must evaluate medical and other relevant evidence to assess
    and determine the claimant's "residual functional capacity" ("RFC"). This
    is an assessment of work-related activities that the claimant may still
    perform on a regular and continuing basis, despite any limitations imposed
    by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);
    416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC,
    the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC
    assessment? If so, then the claimant is not disabled. 20 C.F.R.
    §§404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform
    his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience,
    is the claimant able to make an adjustment to other work that exists in
    significant numbers in the national economy? If so, then the claimant is
    not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c);
    416.960(c). If the claimant cannot perform such work, he or she is
    disabled. *Id.*

Page 3 - OPINION AND ORDER

*See also Bustamante v. Massanari,* 262. F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.; see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ applied the sequential process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since her application on January 16, 2009. Tr. 19. At step two, the ALJ found Plaintiff's affective disorder, alcohol abuse, and episodic syncope were severe impairments. Tr. 20. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. *Id.*

The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot climb ladders, ropes or scaffolds, and she should avoid exposure to heights and moving machinery. She should not drive.

Page 4 - OPINION AND ORDER

She can perform simple routine tasks, she should not have contact with the public, but can have occasional interaction with coworkers and supervisors. Tr. 22. In reaching his conclusion, the ALJ considered Plaintiff's testimony, but found her not fully credible. Tr. 23. At step four, the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 28. At step five, the ALJ found there were jobs in the national economy Plaintiff can perform, including warehouse checker, electronic worker, and production assembler. Tr. 29. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, through August 7, 2013.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009)(quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007)(quoting *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir.

Page 5 - OPINION AND ORDER

2006)(internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray,* 554 F.3d at 1226.

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner,* 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## ADMINISTRATIVE RECORD

### I. Adult Function Report

Plaintiff completed an Adult Function Report and Pain and Fatigue Questionnaire on April 25, 2009. Tr. 262-270. She stated that "most mornings" she got up by 7:00 a.m. to get her children ready for school. Tr. 262. Sometimes her aunt and uncle help her. "Sometimes I go back to bed and sleep until they get home." *Id.* She works on a computer, folds laundry, and does dishes. She goes to bed at midnight although sometimes she cannot sleep and is awake until 2 or 3:00 a.m.

She cares for her three children, including bathing, feeding, and playing with them. Tr. 263. She cares for pets by feeding and watering them. Her aunt and uncle help her with cooking and cleaning. Plaintiff has back spasms that make it difficult to relax and to sleep. Bipolar disorder and PTSD cause anxiety that prevents sleep. Her aunt helps her wash her hair when she is unable to stand in the shower. She has to be reminded to take her medication or she will forget. Tr. 264. She

Page 6 - OPINION AND ORDER

tries to make complete meals every other night, but some days she cannot cook because she is dizzy. Tr. 264.

Plaintiff stated she could do laundry, dishes, mow the lawn, and sweep and mop, although "by the time I start mopping I have a hard time moving because my back." *Id.* She does laundry daily. The mowing "takes me a[n] hour or longer I get halfway through and get the shakes have to stop and take a break." *Ibid* Sometimes she has to let someone else finish what she has started.

She said she goes outside "about every two hours," but sometimes she does not go outside at all. Tr. 265. She does not drive. She grocery shops about once a month for about two hours. Her hobbies are reading, poetry, basketball, bicycle riding, exercising, swimming, and hiking, and although she often reads, she does not engage in the other activities often anymore. When she is physically active Plaintiff gets "shaky and faint - my back will spasm and sometimes it's just hard to move." Tr. 266. Most of her social contact is by telephone and on the internet. She needs to be reminded to make and attend appointments, and she needs someone to go with her to appointments.

Plaintiff stated she had problems getting along with other people, because "my mouth causes problems, very irritable," and she does not socialize because of pain and anxiety. Tr. 267. Her conditions affect her ability to lift, squat, bend, stand, walk, sit, see, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. Tr. 267. She cannot lift more than 15 pounds or walk for more than 30 minutes. She becomes frustrated because she cannot understand things as easily as she could before her conditions began. She can walk about four blocks before requiring a ten to 15 minute break, and can pay attention for about ten minutes. She has trouble following written instructions, and sometimes she has to reread them several times. She can follow spoken instructions but "sometimes it has to be repeated because my mind goes blank

sometimes when I'm being spoken to." *Id.* People irritate her, and she does not handle stress or changes in routine well. She has nightmares, and wears glasses and an ankle brace.

Plaintiff has burning sensations, aches, numbness, stinging, and sharp shooting pain in her back, right leg, shoulder and head. Tr. 270. The pain is daily in her back and intermittent in her shoulders. The pain is caused by playing with her children or doing chores. The pain is worse with cleaning, and "sometimes just turning does set it off." *Id.* Nothing makes the pain better.

She has experienced fatigue since she was a child, and takes two to three naps daily. Fatigue causes her to be inactive, and she is forgetful. She can be active for about two hours and then lies down for a couple of hours.

## II. Testimony

Plaintiff and a vocational expert (VE) testified at the July 2013 hearing. Plaintiff was represented by counsel. She testified she last worked in November 2005 in a care facility as a resident assistant. Tr. 74-75. Her duties included helping residents with personal care. Plaintiff worked at the facility for about a month before she was fired after a urinalysis revealed methamphetamine. Tr. 75-76. She has not used methamphetamine since November or December of 2005.

Plaintiff has custody of her three children. Tr. 76. The children lived with their father for several months in 2005 and 2006. Plaintiff receives state assistance for rent and food stamps.

Plaintiff has episodes of syncope which cause her to faint. They have decreased in frequency, and the last episode was about four months before the July 2013 hearing. Tr. 78. Plaintiff has a condition called Vagal Vassar Depressor Syncopy. She will faint if she tips her head back too far, and if she squats "when I stand up, I have to have something to hold on or - - within the vicinity,

Page 8 - OPINION AND ORDER

otherwise I will tingle head to toe, and everything will go black, and I will hit the floor. So I've kind of learned to control my movements as best as possible." Tr. 79. Plaintiff stated that "[s]howers are still kind of iffy. If the water is too hot, I will pass out . . . ." *Id.* At the time of the hearing Plaintiff was taking Topamax and Amitriptyline. Her neurologist took her off her other medications due to concern that they were increasing her headaches. Plaintiff said she had a migraine with loss of feeling in her right arm, and her neurologist was concerned it was a complicated migraine that turned into a min-stroke. Tr. 80.

Plaintiff has migraines at a "minimum, three times a month." Tr. 81. Some of them last four or five days. Tr. 82. Amitriptyline has helped "somewhat" with sleep issues, but Plaintiff still wakes in the middle of the night and cannot go back to sleep. Tr. 82. She naps once or twice a day for between 45 minutes and an hour and a half. *Id.*

Plaintiff testified she has issues arising from bipolar disorder, including difficulty being around people. "I don't focus when I'm in a crowd of people. I get edgy, irritable. I get frustrated really easy if I feel overwhelmed." Tr. 83. She is easily frustrated on a daily basis even when she is alone. "If I take my sunglasses off, I try to remind myself where I put them, and if I leave the room and come back and can't remember, I will tear my room up because I am so irritable and upset at the fact that I just took them off and can't remember where I put them . . . ." Tr. 84.

She has daily episodes of nearly fainting. These happen at least once a day and as often as four or five times a day. *Id.* The episodes can be caused by "standing too quickly, squatting, bending over, tipping my head backwards, turning it from side to side too quickly," and heat. Tr. 85. She gets dizzy after ten to fifteen minutes on a treadmill. She can bend her head forward for about a minute and a half before she gets dizzy.

Page 9 - OPINION AND ORDER

### III. Medical Records

The medical records are extensive, and the parties are familiar with them. Therefore they will be set out below when relevant.

### DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to find anxiety a severe impairment at step two; (2) improperly weighing medical evidence; (3) failing to properly consider the limiting effects of Plaintiff's impairments; and (4) improperly weighing lay evidence.

### I. Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Yuckert,* 482 U.S. at 140-41. The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do basic work activities." 20 CFR § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical

evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 CFR § 404.1508.

The ALJ properly determined that Plaintiff had severe impairments at step two and continued the analysis. Any error in failing to identify other limitations as "severe" at step two is therefore harmless. Moreover Plaintiff does not identify functional limitations arising out of anxiety that are different than those arising out of an affective disorder, an impairment the ALJ did find severe at step two.

## II. Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn,* 495 F.3d at 632. In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n. 2. The ALJ may reject

Page 11 - OPINION AND ORDER

physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**A.  Caleb Burns, Ph.D.**

Dr. Burns examined Plaintiff in May 2008. Tr. 768-85. The evaluation included a mental status examination and psychological testing including the Wechsler Adult Intelligence Scale-III ("WAIS-III"), the Wechsler Memory Scale-III ("WMS-III"), the Personality Assessment Inventory ("PAI"), and the Mood Assessment Scale. Dr. Burns also administered the Word Reading subtest of the Wide Range Achievement Test-4.

On mental status examination Dr. Burns noted Plaintiff was cooperative without signs of severe depression or anxiety. Tr. 777. Her attention and concentration were not grossly impaired, and her insight and judgment were reasonably good. *Id.* Testing indicated average intelligence with good memory functioning. Tr. 778, 779. Dr. Burns's diagnostic impression was Major Depression, recurrent, mild; Anxiety Disorder, NOS; and PTSD. Tr. 781.

Dr. Burns completed Section I of a Mental Residual Function Capacity Assessment ("MRFCA") in which he indicated Plaintiff was "moderately" limited in multiple functional categories: the ability to carry out detailed instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and

Page 12 - OPINION AND ORDER

respond appropriately to supervisors; the ability to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; and the ability to travel in unfamiliar places or use public transportation.    Tr. 786-87.  The form defines a "moderate" limitation as "[a] limitation which seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis, i.e., 8 hours a day, 5 days a week, or an equivalent work schedule." Tr. 786.  The form defines "markedly limited" as "[a] limitation which precludes the ability to perform the designated activity on a regular and sustained basis, i.e. 8 hours a day, 5 days a week, or an equivalent work schedule." Tr. 786.  The form lists twenty functional factors for evaluation.

The Social Security Program Operations Manual Systems ("POMS") specifies that section I of the MRFCA "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment."** POMS DI 24510.060(B)(4)(a).  Emphasis in original.  Section III of the form contains the actual mental residual functional capacity assessment. *Id.* See also *Nathan v. Colvin,* 551 Fed.Appx. 404, 408 (9th Cir. 2014).  Dr. Burns did not complete Section III of the form.

"Moderately limited" as used in the MRFCA form means that an individual's capacity to perform the activity is impaired, but, according to POMS, it does not mean that an individual is precluded from performing that activity.  POMS DI 24510.063.    This court has found that a "moderate" limitation on a MRFCA does not mean that an individual is precluded from performing that activity. *Coleman v. Astrue,* No. 3:11-cv-01112-RE, 2013 WL 550536, at *7 (D. Or. Feb. 11, 2013).  "Markedly Limited" is  checked "when the evidence supports the conclusion that the

Page 13 - OPINION AND ORDER

individual cannot usefully perform or sustain the activity." *Id.* Accordingly, moderate limitations on the MRFCA need not be included in a claimant's RFC.

The Commissioner argues that the identified limitations are adequately included in the RFC, noting the ALJ accommodated Plaintiff's moderate limitation in carrying out detailed instructions by limiting her to simple routine tasks. Tr. 22. Plaintiff contends the ALJ erred by failing to include limitations relating to maintaining a schedule, having regular work attendance, being punctual, sustaining an ordinary routine without special supervision, responding to supervisors, and being distracted by others. However, those moderate limitations do not preclude the satisfactory completion of the functions, and the ALJ did not err in failing to include those limitations in Plaintiff's RFC.

## B. Robert Henry, Ph.D.

Dr. Henry reviewed the medical record and opined in May 2009 that Plaintiff "would do best working separately from others." Tr. 719. Plaintiff argues the ALJ erred by failing to include this in her RFC. However, the ALJ did not err because he restricted Plaintiff to only "occasional interaction" with coworkers and supervisors. Moreover, recommendations or conditions under which a claimant's employment performance may be optimized need not be included in the RFC. *Rounds v. Comm'r Soc. Sec. Admin.,* 795 F.3d 1177, 1185 (9th Cir. 2015).

## C. Utako Sekiya, M.D.

Dr. Sekiya assessed Plaintiff in April 2009. Tr. 729-31. On mental status examination Plaintiff was cooperative, with somewhat intense eye contact, and was somewhat guarded, but appeared more relaxed by the end of the interview. Tr. 730. She had an anxious and intense affect. Plaintiff's thought processes ranged from tangential to relatively well-organized, and she had no

Page 14 - OPINION AND ORDER

psychotic features. *Id.* She had "somewhat decreased" concentration and attention, but was alert and oriented with average intelligence. Tr. 730. Her insight and judgment were poor and unreliable.

Plaintiff contends that the ALJ erred by failing to include in the RFC functional limitations related to intense interactions, guardedness, anxiousness, periods of tangential thought process, decreased attention and concentration, and poor insight and judgment. The ALJ did not err because he limited Plaintiff to simple routine tasks with no public contact and limited interactions with co-workers and supervisors.

## IV. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff's aunt, Barbara Anderson, completed a third-party function report in April 2009. Tr. 253-60. Ms. Anderson reported that Plaintiff readies her children for school, does laundry and folds clothes, picks her children up from school, rests, helps prepare dinner if able, helps clean up, gets the children ready for bed, and watches television. Plaintiff takes care of her children and pets.

Plaintiff "passes out a lot or back goes into spasms." Tr. 254. She does not sleep well. Ms

Page 15 - OPINION AND ORDER

Anderson checks on Plaintiff when she bathes to insure she has not fainted. She has helped her wash her hair, and reminds her to take her medication. Ms. Anderson does most of the cooking. Ms. Anderson said Plaintiff does laundry daily, cleaning, and spends an hour or more mowing the lawn. Tr. 255. Plaintiff goes outside daily, and shops for groceries once a month. She uses the internet daily, and socializes on the computer and telephone. Regarding Plaintiff's ability to get along with other people, Ms. Anderson said [s]he is very guarded and small things make her very upset or she will have triggers that are not good." Tr. 258. Dizziness and fainting preclude social activities.

Ms. Anderson said Plaintiff's conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, remember, complete tasks, concentrate, understand, follow instruction, and get along with others. Tr. 258. Plaintiff can walk three blocks before requiring 10 to 20 minutes of rest. She can pay attention for 10 to 15 minutes. She does not finish what she starts, has to re-read written instructions, does not follow spoken instruction, and does not handle stress, or changes in routine, well. *Id.*

In August 2009 Ms. Anderson wrote a letter in which she states Plaintiff is "pretty much confined to home due [to] her illness," and could only go for "very short" walks due to dizziness. Tr. 287.

The ALJ noted Ms. Anderson's statements and found the medical evidence supported an RFC less restrictive than suggested by her. The ALJ found Plaintiff less than fully credible, and Plaintiff does not challenge that finding. On this record, the ALJ did not err in weighing the lay testimony.

/ / /

/ / /

Page 16 - OPINION AND ORDER

**V. The ALJ's Step Five Finding is Supported by Substantial Evidence**

Each job identified by the Vocational Expert's testimony, upon which the ALJ relied at step

five, has a Specific Vocational Preparation (SVP) level of 2. Plaintiff contends that the RFC's

limitation to simple tasks is inconsistent with occupations requiring a SVP level of 2. An

occupation's SVP is the amount of time a typical worker requires to learn the techniques, acquire

the information, and develop the facility required for average performance in a specific job. The

*Dictionary of Occupational Titles* classifies SVP at levels 1 through 9. Work with an SVP of 2 is

classified as "unskilled work," defined in the regulations as work requiring little or no judgment to

do simple duties that can be learned within 30 days. SSR 00-4p, *available at* 2000 WL 1898704,

20 C.F.R. § 416.968(a). The ALJ's step five finding is supported by substantial evidence.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this matter is

dismissed.

Dated this 8 day of June 2016.

Mark D. Clarke
United States Magistrate Judge

Page 17 - OPINION AND ORDER